HENRY BRACKETT and WIFE *vs.* WAIT and MOULTON.

ORANGE,
*March,*
1834.

The law as established in this case, 4 Vt. Rep. 389, recognized.

A difference in the estimate of the amount of the debts and property, if not great, will not distinguish this case from the one there presented.

To give effect to a deed of a prior date unrecorded, to one recorded, the second grantee must have notice of the execution, contents and existence of the prior deed.

A deed of gift to a wife during coverture is delivered, if accepted by the husband.

Evidence that a person is in poor health, and subject to a depression of spirits, is admissible to show that his statements as to his property are not entitled to the same consideration as if made under a different state of feeling.

Declarations of a grantor, after the execution and delivery of a deed, are not admissible in evidence against his grantee.

The court are not under obligation to charge the jury on a supposed state of facts not in evidence.

The fact that a deed was executed on a consideration different from the one expressed does not make the deed fraudulent, though it may be evidence of fraud.

In examining objections to the charge of the court, the charge is to be considered in connection with the facts stated, and as applicable to the evidence before the jury; and unless it appears that it was calculated to mislead the jury on a question of law, the verdict will not be set aside, though there may be doubts of some of the propositions laid down in the charge.

This was an action of ejectment for certain lands in Braintree. Tried by jury on the general issue. The plaintiffs, after proving the defendants in possession of the premises, and in order to prove title in themselves, offered in evidence a deed from William Ford to one of the plaintiffs, Clara Brackett, daughter of said Ford, dated the 19th of May, 1830, and recorded November, 8th, 1830, which deed was admitted without objection.

The plaintiffs then rested their case, both parties claiming under said Ford. The defendants, in support of the issue on their part, offered in evidence a mortgage deed from said Ford to the defendant Wait, executed and recorded July 28th, 1830, and given to secure the payment of certain promissory notes, which are referred to as accompanying said mortgage, and notes executed to said defendant Wait previous to the 19th of May, 1830, and also a quit-claim deed from Ford's administrator to said Wait, dated October 6, 1831, and recorded December 19, 1831, both of which said deeds include the premises in question, both of which deeds were read to the jury. The defendants then rested their defence.

The plaintiffs, in further support of the issue on their part, in order to show that Wait, at the time he received the afore-

ORANGE,
March,
1834.

Braackett et ux.
vs.
Wait&Moulton.
said deed from said Ford, had notice that said Ford had previously conveyed the same premises to the plaintiffs by the aforesaid deed, called the following witnesses, to wit:

*John Moulton,* who testified that when Wait rode up, after his said mortgage deed was sent off for record, he (witness) told defendant, Wait, that Ford had secured him by mortgage on the Brackett land and sent it off for record, and that William Nutting, Esq. said that the deeds to his (Ford's) children (which are hereinafter mentioned) were not good. Also,

*Israel Drew,* who testified that in July, 1830, and before the freshet, immmediately after which freshet said mortgage deed was executed, when conversing about his debt against said Ford, he told the defendant, Wait, that it was *reported* in the neighborhood that Ford had deeded some of his property to his children, and the Elisha Ford farm (the land in controversy) to his daughter Clara. That said Wait replied that he did not care for that—Ford's property at West Randolph was worth forty thousand dollars, more than double what he owed. Also,

*Samuel Riford* testified that Wait, in April, 1831, told him he knew of the deed to Mrs. Bracket before the freshet. Riford asked him who informed him, and he answered, Drew. Riford replied that Drew knew, for that he (Riford) who knew the fact and saw the deed, informed Drew immediately after the deed was made. That Wait further informed him, that on the day his mortgage was made, and after the same was made and sent off for record, he (Wait) arrived at Ford's, and that William Ford informed him of the same, and that Mr. Nutting said the deed to his children was not good.

No other evidence was given tending to show notice in Wait of the existence of the plaintiff's deed, at the time he received his mortgage. Nor did it appear that the said Wait knew that said mortgage was executed, or about to be executed, till informed by said John Moulton after it was sent for record.

The defendants then adduced evidence tending to prove, that there had been no delivery of the deed to Clara Bracket in the lifetime of her father, William Ford, and that the deed to Clara Bracket was executed for love and natural affection only. And the plaintiffs introduced testimony tending to prove, that at the time of the execution of said deed, one Fitts was in possession of said farm under a parol lease for one year from William Ford, which would not expire till the April following, and that said Ford executed other deeds to his other children

at the same time, conveying other lands, and that the plaintiff, Henry Bracket, was sent for, to whom the deed to his wife Clara was delivered by her father, and that Bracket handed it to Ira Ford to keep for him, who was a single man and then lived with his father, the said William Ford, and which deed the said Ira put into his father's desk, where said Ira kept his papers, in which desk said William kept his papers, and in which he put said deeds to the other children, and in which he and his father kept their other papers. The defendants then adduced evidence to prove, that at the time the mortgage deed to Wait was executed, William Ford brought forward the aforesaid deeds to his children, among which was the deed to Clara, said Ira Ford being absent from home, and neither said Bracket nor his wife being present, and threw all on the table, and directed William Nutting, Esq., who was present, to draw a mortgage deed to the defendant, Wait, of the premises described in Clara's deed, which was accordingly so drawn by William Nutting, and Wait not being present, William Ford immediately sent it to the town clerk for record. The defendants, further to support the issue on their part, offered evidence to prove that at the time Ford brought forward the aforesaid deeds to his children and threw them upon the table, he observed to William Nutting that they had not been delivered, and now the property which he had intended for his children, on his decease, must go to his creditors. This evidence was objected to by the plaintiffs and excluded by the court; to which decision of the court in excluding said evidence, defendants excepted. It was also proved that William Ford deceased September 23, 1830, and that the deed to his daughter Clara remained in the house of said William Ford until his death, and was after his decease found in the same desk unrecorded, and that plaintiffs did not in the life of said Ford take possession under said deed.

The defendants, in further support of the issue on their part, then adduced evidence to prove, that at the time Ford executed his aforesaid deed to his daughter Clara, he was indebted to the amount of $25,000, among which debts was the one due defendant, Wait, and that about one half the amount of said debts was secured by mortgages on his real estate.

The plaintiffs then introduced testimony tending to prove, that said William Ford, at the time of said conveyance, possess-

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

ed property to the amount of from forty-eight to fifty-one thousand dollars, and that his property consisted in the main of real estate, and of a grist-mill, and of a large woollen factory and machinery in it, which was estimated to be worth about $5000; and also evidence to show, that in July, 1830, said grist-mill, factory, machinery, cloths, wool and dye stuffs in the factory, were carried off and destroyed by the freshet, which were estimated by the plaintiff's witnesses to be worth from twenty-five to thirty thousand dollars.

The defendant also called witnesses who testified, that in their opinion, at the time of said conveyance, the real estate of said Ford, including said grist-mill, factory and machinery, was worth thirty-seven thousand dollars. And the plaintiffs put into the case the probate records, from which it appeared, that the personal estate of the said Ford was appraised at about three thousand dollars, and that on the final settlement of said estate, it paid but five mills and a half on the dollar—that is, such was the final dividend. But it did appear that many of the large debts were secured by mortgage on real estate, so that about half of said twenty-five thousand dollars of debts were paid in full. The defendants also proved that the said William Ford, in the course of the year previous to the conveyance aforesaid, repeatedly said in conversation with various individuals, that he was greatly embarrassed by debts and was doubtful whether he could pay them, and at other times said that he was *insolvent*, and wholly unable to pay his debts. The plaintiffs then offered evidence tending to prove that said Ford was, during the period of the above expressions, in poor health, hypochondriacal, and subject at times to a depression of spirits, and frequently when unimbarrassed, but when thus depressed in spirits, made similar expressions, and in the habit of thus complaining of his property. To the admission of this evidence the defendants objected, but the court overruled said objection, and suffered said evidence to go to the jury; to which decision of the court in admitting said evidence, the defendants excepted.

The defendants' counsel contended, and requested the court to charge the jury,

1. That they must find a delivery of the deed from William Ford and Clara Brackett, and that the parties intended it should take immediate effect.

2. That the deed being a voluntary one, the grantor, so long

as it was left unrecorded and in his power and control, had a right, if he chose, to take and cancel it, and mortgage the same land to a *bona fide* creditor.

ORANGE,
*March,*
1834.

Brackett et ux.
*vs.*
Wait&Moulton

3. That notice to Wait of the unrecorded deed to Brackett's wife must be clearly proved. The evidence of notice must be indubitable. It is not sufficient that the inference is probable—it must be necessary and unavoidable. That knowledge of a flying report in the neighborhood, that a man had conveyed his farm, is not notice to affect a subsequent purchaser of the same farm, who first procures his deed to be recorded. Neither is one man's saying to another, that it is *reported* that a man has deeded his land to his children, notice to affect a subsequent purchaser.

4. That if the jury find that Wait had notice of said deed, yet if at the time he received such notice, he was also informed that said deed was void, or invalid, the plaintiffs cannot recover. And if Wait's deed had been so executed and sent off for record in his absence, any notice to him, when he was informed of the execution of his deed, that a previous unrecorded deed existed, would not prejudice his title, particularly if he was informed that the unrecorded deed was void.

5. That from the plaintiffs' suffering their deed to lie unrecorded from the time it was executed until into the month of November, the grantor during the same period continuing in possession of the premises by his tenant, the defendant, Wait, might well presume that the deed was invalid for some cause, or that it had been cancelled, or that the estate had been reconveyed, and that this neglect to procure said deed to be recorded, being unexplained, renders it a nullity as to the defendants.

6. That the jury should return a verdict for defendant, unless they find that William Ford had left property amply sufficient to pay all his debts under any state of circumstances. If the grantor had died just before his loss by the freshet, and his property left could not be sold by his representatives for a sufficient sum to pay his debts, after deducting any assignment that might be made to his widow by the probate court, any deed of gift made to his children is void as against creditors.

7. That Wait, being an *antecedent* creditor, had a lien on all of Ford's property, which could not be defeated by any conveyances made to his children for *love* and *affection*, and without a *pecuniary* consideration. And if the jury find that

at the time the deed to Brackett's wife was executed, Ford was indebted to the amount of $25,000 or more, and owned property, real and personal, and principally real, and in a factory, and to the *appraised* value of from thirty-five to forty-five thousand dollars, the conveyance to his daughter was void against *autecedent* creditors.

8. That if the jury find that the deed to Brackett's wife was delivered, still if it was left with the grantor, unrecorded, for six months or any other length of time, and the grantor while he had the deed in his own posseson, conveyed the land to a *bona fide* creditor to pay a debt, who saw the unrecorded deed in the grantor's possession, the subsequent grantee can hold the land conveyed.

9. If the jury find that no consideration was paid by the grantees for the deed, they will return their verdict for the defendants, because the deed expresses a pecuniary consideration and the plaintiffs are not at liberty to set up love and affection as a consideration to support this deed.

10. That defendant Wait's deed from the administrators on Ford's estate, is sufficient against the plaintiffs' voluntary deed, to warrant a verdict for defendants.

11. That, if the jnry find that William Ford, at the time he made plaintiffs' voluntary deed, was embarrassed with debts to the amount $24,950, and the principal part of his real estate was under heavy mortgages to secure part of said debts, the plaintiffs cannot recover, even if the jury find that said Ford was not in point of fact, insolvent, especially if his solvency was doubtful when he made the plaintiffs' deed.

But the court then neglected to charge as requested, except on the first point, but did among other things give in charge to the jury, that both parties claiming the same land under William Ford, the deed from said William Ford to Clara Brackett, *prima facie* gave the plaintiffs a title in this action. But the defendants contend that this deed was never delivered so as to become valid.

If the jury find that this deed was not delivered to the plaintiffs by said William Ford in his life time, it is of no validity and the plaintiffs have no title, and their verdict will be for defendants. But if the jury believe that said William Ford, after executing said deed, sent for said Brackett, and told him that he had executed such deed, and he might do with it as he pleased, and afterwards took it up and handed it to said

ORANGE,
Murch,
1834.

Brackett et ux.
vs.
Wait&Moulton

Brackett, and told him it was all he could do for him, and said Brackett took it and directed said Ira Ford to keep it for him, as the testimony tends to prove, it was a sufficient delivery, and the plaintiffs would be entitled to recover if the case rested here.

The defendants then produced a deed of the same land, from the same William Ford, executed after the deed under which the plaintiffs claim, but put first upon the record; this again entitled the defendants to recover, because first recorded. To avoid this deed the plaintiffs have attempted to show that the defendant, Wait, knew of the existence of the plaintiffs' deed before and at the time of his receiving his deed.

Now if the jury believe that said Wait had the knowledge of the plaintiffs' deed before he received his, as testified by Moulton, Drew and Riford, he was entitled to no benefit from his deed being put upon the record before that of the plaintiffs'. If the jury do not find Wait thus to have had notice of the plaintiffs' deed when he received his, they will return a verdict for the defendants. If the jury find he had such notice of said deed, they will proceed to consider the other objections made by the defendants to the plaintiffs recovering.

If the jury find the farm in question to have been leased to William Ford before the execution of the plaintiffs' deed to his tenant, Fitts, for a year, ending April, 1831, that furnished a sufficient reason why the plaintiffs did not take possession of the farm in the lifetime of the said Ford, and would remove that objection to the plaintiffs recovering.

Upon the point of the pecuniary consideration named in the plaintiffs' deed and proof of its being love and natural affection, the court instructed the jury that with regard to this objection, either of said considerations would render the deed valid, and that the variance of the proof would not vitiate the same. With regard to the most important point in the case, to wit, whether the plaintiffs' deed is to be considered fraudulent as against said Wait, who shows himself a creditor of said Ford by reason of the final insolvency of said Ford's estate, the court instructed the jury that said Ford must not be permitted to put his property into the hands of his children, in fraud of his just creditors, but he had a right to make a reasonable provision for his children, out of the property he possessed, if it left sufficient to pay his debts; and he was not

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

obliged to anticipate that half his property would be destroyed by a flood in a moment, nor that he would die leaving a widow to be endowed from his property.   The jury would consider the amount of Ford's property at the date of his deed to the plaintiff's wife ; and the amount of the debts he then owed, and, if they found his property sufficient to pay his debts after this deed to his daughter, Clara, if he had lived and there had been no destruction of his property by the flood, till his affairs became settled, they would consider the deed valid against the creditors of said William, notwithstanding. the after-insolvency of his estate, and they would treat the subject as if they had been sitting to decide it a day or two before said destruction of the property by the flood.

The jury returned a verdict for the plaintiff.   But to the decisions of the court and charge and refusal to charge, the defendants made their exceptions, which were allowed and certified, and upon which the cause comes here for further examination.

*Upham, and Smith & Peck for defendants.*—The deed under which the defendants claim, having been first recorded, secures to them the title to the lands in question, unless the plaintifls can defeat it by proving notice to Wait of their unrecorded deed, at the time he received his mortgage.

The testimony is insufficient in law to charge Wait with notice of the execution and delivery of the plaintiffs' unrecorded deed, at the time he received his mortgage.

The law goes upon the ground, that express notice of a prior conveyance unrecorded, is equivalent to fraud, and for that reason avoids the subsequent recorded deed.   The following cases cited.—3 Atk. 650.—D.  Chip.  Rep., 42—Ib. 49. 8 John. Rep. 137.—3 Ves. Jr. 478.—1 Burr. 474.—2 Mass. 509.—3 Pick. 149.—3 Conn. Rep. 406.

The evidence of notice, therefore, should be clear and unequivocal.   Suspicion of notice, though a strong one, says *Ld. Hardwick* in *Hine* vs. *Dodd*, (2 Atk.  275) is not sufficient to justify the court in breaking in upon the act of parliament.— 3 Pick. 149.—*Norcross* vs. *Widgery*, 2 Mass. Rep. 504.— 4 Pick. 253.—15 Mass. 253.—8 John. 137.

2. The declaration of Wm. Ford when he brought forward his unrecorded deeds to his children, among which was the deed to his daughter, Clara Brackett, " *that none of them had*

*been delivered,"* should have been admitted in evidence as a part of the *res gestae.*—1 Starkie's Ev. 39, 47, 48, 49.

ORANGE,
March,
1834.

Brackett et ux.
*vs.*
Wait&Moulton.

The conduct and declarations of Wm. Ford, while he held the plaintiffs' deed in his possession unrecorded, were. proper evidence in the case. They tended to show that the deed to Clara Brackett had not been delivered. The court below took it for granted that the deed had been delivered, and decided that the declaration of the grantor, after the execution and delivery of his deed, could not be received in evidence to defeat the title of the grantee. If the court were right in the postulate that the deed had been delivered, then perhaps the decision excluding the evidence, was correct. But we insist the evidence shows no delivery of the plaintiffs' deed, and the jury should have been so instructed.—*Mayner* vs. *Mayner,* 9 Mass. Rep. 456.—*Harrison* vs. *Trestees of P. Academy,* 12 Mass. 456. *Jackson* vs. *Dunlop,* 1 John. Cas. 114.—*Jackson* vs. *Phipps,* 12 John. Rep..418.

3. The evidence offered by the plaintiffs and objected to by the defendants, viz, that Wm. Ford enjoyed poor health, was hypochondriacal and subject, at times, to depression of spirits, and frequently when unembarrassed, complained of his poverty, &c. was improperly admitted.

4. The jury should have been instructed, that from the plaintiffs' suffering their deed to lie unrecorded from the time it was executed until Nov. A. D. 1830, (the grantor during the same period continuing in possession of the premises by his tenant, Fitts,) the defendant, Wait, might well presume, under the circumstances of the case, that the deed was invalid for some cause, or that it had been cancelled, or that the estate had been reconveyed, and that this neglect to procure the deed recorded being unexplained, rendered it a nullity as to the defendant, Wait.—*Vide Farnsworth* vs. *Childs,* 4 Mass..Rep. 637.—*Priest* vs. *Rice,* 1 Pick. Rep. 164.—*Wendall* vs. *Van Rensselaer,* 1 John. Ch. Rep. 344.—*Crofts* vs. *Townsend,* Adm. 3, Desau. 229, 230.—American Ch. Dig. 216, No. 36.—*Jackson* vs. *Givers,* et. al. 8 John. Rep. 137.

5. If the deed to Clara Brackett was in point of fact delivered, and the defendant, Wait, had heard of it by *report* in the neighborhood, still, if it was left in the possession of the grantor unrecorded, for three or four months, and he, while he. thus held the deed, conveyed the land to Wait to pay a just debt, who saw the unrecorded deed in Ford's possession, Wait can

ORANGE,
March,
1834.

Braackett et ux.
vs.
Wait&Moulton.

hold the land conveyed to him, against the plaintiffs' deed.— *Evans* vs. *Brackett*, 6 Ves. 173.—*Hildreth* vs. *Sands*, 2 John Ch. Rep. 48.—*Hungerford* vs. *Earl*, 2 Vernon 261.

6. The jury should have been instructed to return a verdict for the defendants, if they found no consideration was paid by the grantee for the land conveyed, because the deed expresses a pecuniary consideration of $3000, and the plaintiffs are not at liberty to set up love and affection as a consideration to support the deed.—*Hildreth* vs. *Sands*, 2 John. Ch. Rep. 42.— *Watt* vs. *Grove*, 2 Sch. & Lef. 500.—*Marigby* vs. *Hand*, 7 John. Rep. 341.—*Jackson* vs. *Delany*, 4 Cowen's Rep. 427; 2. Ves. 628; 1 John. Rep. 139; 3 John. Rep. 506.

But if we are incorrect in this position, then we say, the court below should have charged the jury that if the deed was false as to its consideration, it was evidence tending to show, that it was fraudulent in point of fact.—*Windall* vs. *Van Rensselaer*, John Ch. Rep. 352.—*Grove* vs. *Watt*, 2 Sch. & Lef. 492.

7. We maintain that the jury should have been directed to return a verdict for the defendants, unless they found that Wm. Ford had left, after his conveyance to his daughter Clara, property amply sufficient to pay all his debts under any state of circumstances, and if he had died immediately after this voluntary conveyance, and his property left could not, in the opinion of the jury have been sold by his representatives for a sufficient sum to pay all his debts, after deducting any assignment that might be made to his widow by the probate court, any deed of *gift* to his children, would be void agaist his creditors.— *Salmon* vs. *Bennett*, 1 Conn. Rep. 525.—*Hendee* vs *Longworth*, 11 Wheat. 213.

8. We contend that Wait being an *antecedent* creditor, had an equitable lien on all of Ford's property, which could not be defeated by any conveyance made to his children for love and affection, and without a *pecuniary* consideration ; and the jury, in the Court below, should have been directed that if they found, at the time the deed to Clara Brackett was executed, Ford was indebted to Wait and others in the sum of $25,000, and owned and possessed property, real and personal, and principally real, and in a factory, and at the *appraised* value of from $35,000 to $45000, the conveyance to his daughter Clara was fraudulent and void against all *antecedent* creditors, although in point of fact he was not insolvent. This

position is well sustained by the following authorities, viz., ORANGE, *March*, 1834.
*Russell* vs. *Hammond*, 1 Atk. 13.—*Walker* vs. *Burrows*, ib.
93.—*Lord Townsend* vs. *Windham*, 2 Ves. Sen. 10.—*Hil*- Brackett et ux. *vs.* Wait&Moulton.
*dreth* vs. *Sands*, 2 John. Ch. Rep. 48.—*Rude* vs. *Living*-
*ston*, 3 John. Ch. Rep. 481.—*Taylor* vs. *Jones*, 1 Atk. 600.
*Middlecome* vs. *Marlow*, 2 Atk. 500.—*Stileman* vs. *Ash-
down*, id. 480.—*St. Armond* vs. *Borbond*, Comyn's Rep.
255.—*Stephens* vs. *Oliver*, 2 Bro· 90.—*Shaw* vs. *Standish*,
2 Vem. 326.—*Naim* vs. *Prouse*, 6 Ves. 759.—*White* vs.
*Sanson*, 3 Atk. 410.—*Fitzer* vs. *Fitzer*, 2. id. 511.—*Rid-
ney* vs. *Caussmaker*, 12 Ves. 136.—*Halloway* vs. *Millord*, 1
Madd. Ch. Rep. 414.—*Bayord* vs, *Hoffman*, 4 John. Ch.
Rep. 450.—*Hendee* vs. *Longworth*, 11 Wheat.—213. *Ben-
nett* vs. *Bedford Bank*, 11 Mass. 421 ; Jeremy's Eq. Juris
413 ; *Saxton* vs. *Wheaton et. ux.*, 8 Wheat. 229.

The decision made by the supreme court in this case, in
1832, should be examined before we leave this point.—Vide
4 Vt. Rep. 389.

It appeared from the bill of exception allowed in 1832, that
Ford owned and possessed estate to the value of more than
$60,000, at the time he made the conveyance to his daugh-
ter, Clara, and that he owed only $16,000. Upon this state-
ment of the case, the court refused to adjudge the conveyance
to Clara Brackett fraudulent and void against the creditors of
William Ford.

We now present to the court a very different case. William
Ford, at the time he made this voluntary conveyance to his
daughter, Clara, was embarrassed with debts to the amount of
$25,000, and owned and possessed property, real and per-
sonal, and principally real, to the *appraised* value of from
$35,000 to $45,000.

We are aware that the Hon. Judge who delivered the opin-
ion of the court in this case in 1832, more than intimated that
Chancellor Kent, in the case of *Reede* vs. *Livingston*, took
an incorrect view of the English authorities upon the subject
of voluntary conveyances. And to sustain himself and to
show the erroneous views of the chancellor, he referred to the
following authorities, viz., 1 Roper's Husband and Wife, 307
and 8.—*Townsend* vs. *Windham*, 2 Ves. Sen. 11.—*Fisk* vs.
*Wilkinson*, 5 Ves. 384 ; Newland on Cont. 383, 4, and 5.—
*Salmon* vs. *Bennett*, 1 Con. Rep. 525.—*Hendee* vs. *Long-
worth*, 11 Wheat. 213. It will be found on examining these

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

authorities, that not one of them will sustain this conveyance against the creditors of William Ford. And I do not think they shake the doctrine of Chancellor Kent advanced in the case of *Reede* vs. *Livingston.*

9. We insist that Wait's deed from the administrators on Ford's estate is sufficient to hold the lands in question against the plaintiffs' voluntary deed. And in support of this position we rely upon the following authorities, viz., *Doe ex dem* vs. *Otley,* 9 East. 59.—*Colville* vs. *Parke,* Cro. Jac. 158.—*White* vs. *Sanson,* 3 Atk. 412.—*Ld. Townsend* vs. *Windham,* 2 Ves. Sen. 10.—*Roe* vs. *Milton,* 2 Wils. 56.—*Goodright* vs. *Moses,* 2 Wm. Black. Rep. 1019.—*Evelyn* vs. *Evelyn,* 2 Bro. 148; 4 Bos. and Pul. 332; 8 Ter. Rep. 528; 1 John. Ch, Rep. 261; 2 Taunt. 82; Sugden on Vendors, 462, 3, 4 and 5; 18 Ves. 84.

Lastly, we say, the defendant, Wait, may claim as a purchaser under his mortgage deed.—1 Cowp. 278.

And the authorities last cited show most conclusively that a voluntary conveyance may be avoided by a subsequent purchaser for a valuable consideration even with knowledge of the prior conveyance.

*Nutting and Weston contra.*

The opinion of the court was pronounced by

WILLIAMS, Ch. J.—This cause has heretofore been before this court. In 1831 a trial was had before a jury, and the county court decided that a conveyance made to a child for the consideration of love and affection, by a person indebted at the time, was void against his existing creditors. On exceptions the cause came before this court at their term held in this county in 1832. After a full argument and examination of all the authorities, the judgment of the county court was reversed. All the questions then made and decided, are to be considered as settled, and we shall not therefore, enter into an examination of the authorities which have been cited at this time upon that subject. Where a case comes before this court, whatever points are made, considered and decided, are treated as the law applicable to that case, while it remains in controversy, and to all others similar, unless the court should require a further investigation, the law should be found to be different, and the decision overruled.

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

The statute of 27 Elizabeth, was considered as not adopted and not necessary or applicable under our recording system. Our present statute is amply sufficient to protect purchasers or others by avoiding all conveyances made with intent to avoid the right, debt, or duty of another.   All the cases in relation to the effect of the statute of 27 Elizabeth on voluntary conveyances, as to the after purchasers, for valuable consideration, are irrelevant to the present inquiry.   Whether the term, good consideration, intends a consideration founded on natural affection only, or whether it is to be considered as equivalent to the term valuable consideration, whether a conveyance may be void as to after purchasers, and not as to creditors, is of no importance, and does not affect the question under consideration. In this case also, when it was formerly before this court, it was decided that a voluntary conveyance made for love and affection, was not *per se* fraudulent as to existing creditors, that if the estate granted was not an undue provision for a child, and did not so far impair the means of the grantor, as to create a presumption of fraud and to be necessarily injurious to creditors at the time, or, in other words, if the gift was not unreasonable, considering the circumstances of the grantor ; if he was not at the time greatly embarrassed, but retained ample funds, unincumbered, for the payment of his debts, and had no fraudulent intent, such gift or conveyance would be sustained. This case is not to be distinguished from that because there was a difference in the estimate made by the witnesses of the amount of debts due from the grantor, and in the value of the property which he owned, provided the difference was not so great as to show that the conveyance in its immediate effect, was depriving the grantor of the means of satisfying his creditors.   The estimate of both the debts and property might vary according to the time to which the attention of the witnesses were called, and would be very likely to vary from the circumstances mentioned in the argument.   The debts may have been estimated, after he purchased the raw material for carrying on the factory that year, and the material itself not taken into the account in estimating his property.   The effect of the deed from the administrators of Ford to M. Wait, was also considered when the cause was before us two years since. If that deed either established or confirmed the defendant's title, a new trial would not then have been granted.   The questions which have been raised at this time and which have

not heretofore been decided by the court, are 1st, as to the evidence of the notice to the defendant of the plaintiffs' deed. The instructions which the defendant claimed should have been given to the jury, are set forth, in the third particular of his request to the court. This request appears to be more in the nature of argument than a request, and scarcely presents a. point on which the court could have fixed. ·They however adverted to the evidence, and directed the jury, that if it was believed, it was sufficient to prove that defendant had notice of the plaintiffs' deed. It is difficult to lay down any general rule upon this subject, and every case will have to depend upon the proof· applicable to the case. The expressions which have been made use of by the judges and chancellors, were not intended to lay down any general rule applicable to all cases, but were made with a view to the cases before them. To give effect to a deed of a prior date unrecorded, against a deed recorded, there is no doubt but that it must be proved, that the second grantee had notice of the execution, contents and existence of the prior deed. That the defendant had this notice was abundantly proved, by the testimony of the witnesses. He evidently did not consider that he was purchasing a title or taking a mortgage, when there had been no previous conveyance. When his mortgage was executed he was not present, but the deed to the plaintiff, was the subject of conversation. The first information which the defendant had of the mortgage to him, was accompanied with notice of the existence of the plaintiffs' deed, and he accepted of the mortgage, not, because he was unacquainted with the deed to the plaintiff, but because he considered it as inoperative. If he had notice of the execution, contents, and existence of the deed, he took his conveyance, risking the consequence of its proving to be effective, and is not to be protected from the effect of this notice, because he formed an inaccurate opinion in relation to its validity.

2. It has been contended there was no delivery of the deed to the plaintiffs by Ford. But, aside of the presumption that every one accepts that which is for his benefit, the evidence as detailed in the case proved a delivery beyond all controversy. A delivery may be to the party himself, or even to a stranger for his benefit. A deed of gift to a wife during coverture, if accepted by her husband, is accepted by her, and her refusal apart from her husband, can be of no consequence.

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton

As the jury were charged upon this point, there can be no doubt that the facts in evidence, if believed, proved every thing necessary to make a perfect and complete delivery of the deed in question.

3. It has been made a question, whether the evidence that Mr. Ford was in poor health, hypochondriacle, and subject at times to depression of spirits, ought to have been admitted. If this testimony was intended to qualify his admissions or declarations made at the time he was out of health, or to show that they ought not on this account, to be received as full evidence of the facts admitted, it was unquestionably proper evidence. Admissions against the interest of the party making, are received, because it is not supposed that a person will admit any facts against his interest, unless they are true. But they are only evidence of facts liable to be explained or even contradicted ; and the conversations of a man in relation to his property, when in a state of gloom and despondency, would undoubtedly be influenced by his state of mind. There is however another very substantial reason why the objection is not entitled to any consideration. The evidence which this testimony was introduced to rebut, was wholly improper and inadmissible. The solvency or insolvency of Mr. Ford was a fact to be proved by the usual and ordinary evidence. His declarations to that effect were not the proper evidence of the fact, but having been received without objection, it was proper to qualify them, to show what was the state of his mind when they were made.

4. Evidence of the declarations of Ford at the time of his executing the deed to Wait the defendant was offered and rejected, and it is now claimed that it was admissible as part of the *res gestæ*. But it was not a part of any transaction, to which the plaintiffs were a party. This was a transaction between Mr. Ford and the defendant, Wait. The plaintiffs were not present, nor were they any party to it. It they had any estate or right in the land, it was complete before this. The deed at this time was in the possession of Mr. Ford. If it had not been delivered to and accepted by the plaintiffs, Ford might convey to the defendant and his title would be complete by the mortgage deed there executed. The evidence could not be received to show that the deed had not been delivered to the plaintiffs. The defendants were bound to prove that

54

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

fact by other evidence, and if the deed had been delivered, the title had passed from Mr. Ford, and his declarations could not be received in evidence to destroy the title which he had conveyed. This evidence therefore was properly rejected.

5. The defendants were not entitled to the decision and charge as mentioned in their fifth request to the court. The request supposed a fact, not in proof, to wit, that the grantor remained in possession. The object of recording is for the purpose of giving notice. Deeds may, and frequently do lay unrecorded for years, and no one is injured thereby. This may afford evidence of neglect, but is far from being evidence of fraud in all cases. The grantor remaining in possession, if unexplained, may be evidence of fraud. The charge to the jury was satisfactory on this point and contained all that was necessary to be said on the subject. The court were under no obligations to suppose a state of facts not in evidence, and then state how the law would be under a different case than the one before them. The existence of the lease to Fitts and his possession under it was a sufficient reason why the plaintiffs did not take possession during the life of the grantor; and the circumstances of the deed having been unrecorded for only two months, did not afford any presumption either of a fraud or reconveyance from the plaintiffs to Ford.

6. The defendants contended that the deed to the plaintiffs was upon a consideration different from the consideration expressed. If there was any consideration either valuable or good, it would support the deed, as between the immediate parties thereto, and it is not very usual in deeds which are really executed for love and affection, which is termed a good consideration, to express pecuniary consideration in the deed. This consideration of love and affection is frequently inferred from the situation of the parties, whether it is expressed or not. If the deed was executed upon either of these considerations, as has been remarked, it was good between the parties, and though one was expressed in the deed and another was the true consideration, it was not on that account fraudulent, however that may have been evidence of such an intent. The defendant in his argument to the jury, was entitled to, and undoubtedly availed himself of every argument and inference arising either from the manner of its execution, the fact of a pecuniary consideration being expressed when a good consideration was the only one intended, the delivery and the manner

ORANGE,
*March,*
1834.

Brackett et ux.
*vs.*
Wait & Moulton.

of it, the place where it was kept, the fact of the grantor having the custody and possession of the deed, and all the circumstances attending it, as evidence of actual fraud, or that the deed never was delivered. But we cannot consider that expressing a pecuniary consideration in a deed executed as an advancement, makes the deed fraudulent. A sum is sometimes inserted as a consideration of deeds executed for that purpose, to show the amount of the advancement. It has been argued in this case, and it frequently is argued, that the charge should have been in some particular words, that some other principle of law should be laid down, or that it should have been expressed in different language. Unless the court charge incorrectly on the points arising in the case and to which their attention was directed, it is not a ground for granting a new trial or reversing the judgment, that they do not state some other principle of law not arising from the facts to which their attentoin was not called, more especially if they were not reminded of their omission at the time, or because they did not adopt some other words or form of expression.

7. The charge of the court on the question whether the plaintiffs' deed was to be considered as fraudulent, has also been objected to, and presents an important and the most important question in the case. The court was requested to give particular instructions involving not only the considerations of the points decided in this case before, but also of other particulars, in which it is contended this case is distinguishable from the one as before presented to the court. It is obvious, as has already been observed, that a mere difference in the amount of the debts and property, if not so great as to break in upon the principles established by that decision, would not be any criterion to distinguish this case from the one then presented. The principle which was then, and now recognized, is this, that a voluntary conveyance made for the consideration of love and affection (which is to be distinguished from a conveyance purely voluntary or made for no consideration, and which would undoubtedly be adjudged void against creditors,) is not to be avoided by the creditors of the grantor if he was not greatly indebted at the time, and the conveyance under ordinary circumstances, and the events which are to be expected in the common and ordinary course of business, would not impair the security which his creditors had a right to look to, for payment of their

ORANGE,
March,
1834.

Brackett et ux.
vs.
Wait&Moulton.

debts, especially if he retained in his hands ample funds and means for satisfying all the claims of his creditors.

By this it is not to be understood, that a man in debt, although his property may exceed the amount of his debts, is at liberty to settle upon his sons and daughters property to any amount, retaining a bare sufficiency for the payment of his debts, at an estimated or appraised value. Or that he may make such settlements, being in debt to a large amount, and having a large amount of property on hand, if in the usual course of business, a change in the market, a depression in the prices of the goods which he usually sells, a rise in the price of the raw material if he is a manufacturer, and similar fluctuations and changes which all kinds of business are subject to, he could not meet his debts with the property left, or the credit which he could fairly and honestly obtain on the security of that property. There are events as well as the dealings and dispensations of Providence, the prospect that his labors might be interrupted by death, which every prudent man in business should ever contemplate, and should not so incumber or lessen his property by provisions for his children, that on the happening of those events his creditors would be injured. The manner, however, in which his estate would be settled, whether by a prudent or honest administrator or otherwise; whether it would be swallowed up by unjust and improper claims; whether a proper or improper allowance should be made by the court of probate to his widow; and whether the expense of settling the estate would be great or small, could not be guarded against and would rarely enter into the consideration of a man of wealth in giving portions to his daughters on their marriage, or setting up his children in business. He should consider, however, that his business might be stopped, and retain sufficient to satisfy his creditors if that should be the case. But it was correctly observed by the judge who delivered the opinion of the court when this cause was before us heretofore, and by the judge who charged the jury at the last trial, that a man could not anticipate, nor was he under obligation to anticipate in making provisions for a daughter, that all his property might be swept away at once by a flood. It must be admitted, however, that the charge of the court on this part of the case, in answer to the request of the defendant, at first view, would seem hardly reconcilable with the foregoing principles recognized by the court. The rule apparently laid down by the county court as

a naked proposition of law, without reference to the facts could not be supported, inasmuch as it would seem to carry the idea, that if a man retained a bare sufficiency at appraisal to pay his debts, he might convey all the residue of his property to his children, as a voluntary gift. But when the charge is taken in connexion with the facts as stated in the bill, and as applicable to the evidence then before the jury, to wit, that the property of Mr. Ford was worth from forty-eight to fifty-one thousand dollars, and that his debts would not exceed, twenty-five thousand dollars, one half of which was secured on his real estate, and that the property destroyed was more than enough to satisfy all his debts, the jury could not have been misled, nor could they have been warranted in inferring that the grant or deed was fraudulent, or that the circumstances of Mr. Ford were such as to warrant any presumption of a fraudulent intent in him in making the deed to the plaintiffs. The means of his creditors to coerce a payment of their claims, were not impaired by this grant, they were as ample as before, nor did the conveyance either embarrass the grantor or materially lessen his ability to pay or fulfil his engagements; and if the jury had been called on to decide the case as suggested by the judge, a day or two before the flood, they would not have hesitated in saying that the conveyance was upon a good consideration, and did not tend to avoid, delay or hinder any of his creditors. Considering it in this view, the charge of the court does not militate with the principles of law as established by the court. We should not then do justice to set aside this verdict for the purpose of having a charge given to the jury, stating the principles of law more clearly and particularly as we think the jury were not misdirected or misled in the views which they must have taken of the case.

The judgment of the county court is therefore affirmed.