#### FOR THE

### FIRST JUDICIAL CIRCUIT,

##### SEPTEMBER TERM, 1853.

---

PRESENT,

Hon. ISAAC F. REDFIELD, Chief Judge.
Hon. PIERPOINT ISHAM, } Assistant Judges.
Hon. MILO L. BENNETT, }

---

JOHN BRAINARD *v.* HIRAM AND HELON BUCK.

*Admissibility of declarations of third persons, as evidence. Statute of limitations.*

The declarations of a third person, made in the presence of a party, unless made under such circumstances as to call for a reply, will be excluded ; and where such declarations were made in a judicial proceeding, and not directed to the defendant, in the suit, who was then present, but not a party to that proceeding, *it was held* under these circumstances, that the declarations could not call for a denial, and that they were inadmissible, in this suit, against these defendants.

Evidence sufficient to prove an original indebtedness, is not sufficient to take a case out of the statute of limitations. To remove the statute bar, there must not only be an acknowledgment of a subsisting debt, but it must not be accompanied with an unwillingness to pay the debt, for an *implied promise* to pay it, at least, is now held necessary under our decisions.

ASSUMPSIT for money had and received and money paid. The plaintiff, according to his specification, claimed to recover $500, received by the defendants to their use, by the hand of Samuel Buck, deceased; also for money paid to the administrators of Richard P. Heartt, to redeem a mortgage which the defendants were under obligation to pay.

Pleas, the general issue, and statute of limitations. Replications, traverse and a new promise within six years. Trial by jury.

On trial, the plaintiff offered in evidence a deed to himself from Samuel Buck, dated July 14th, 1830; also, a mortgage from Samuel Buck to Richard P. Heartt, dated November 26th, 1826, and a copy of a bill of foreclosure and decree, with the master's report and other papers, and a receipt and discharge of the said mortgage; also a bond from the plaintiff to Samuel Buck, dated July 14th, 1830, and a receipt from Samuel Buck to the plaintiff in full of all demands.

The plaintiff, for the purpose of showing that the money in question came into the hands of the defendants, offered to prove by Mr. Seymour, that at the hearing before the master on the report above named, one of the defendants was present, as a witness, and that in his presence, Samuel Buck, a party to said proceeding, made certain statements relative to said money, tending to show, that the same came into the hands of the defendants, and that the statements were not denied by the defendant then present, who remained silent; to the reception of this testimony, the defendants objected, both on the ground that the statements of Samuel Buck were mere hearsay evidence, and made in the presence of but one of the defendants, and that as it was in a judicial proceeding, the defendant present, could not, under the circumstances, be required to deny them. But the court overruled the objection and received the testimony, holding that it was for the jury to say, under the circumstances, whether the silence of the defendant should be regarded as evidence against him.

The plaintiff's testimony tended to prove, that the money in question was delivered by him to Samuel Buck, for the purpose of being delivered to the defendants, to apply on the mortgage to Heartt, that Samuel Buck delivered it to the defendants to use in their lumbering business; that they were to remit the amount to Heartt in lumber, and had once so remitted it, but the lumber was not re-

ceived or applied on the mortgage; that the money was received in several parcels from 1832 to 1835, and not after; that Samuel Buck died in May, 1847; that the plaintiff took out letters of administration on his estate in Vermont, and that the defendants and one Brown, are his administrators in New York, where he resided at the time of his death, and that all were thus acting as administrators, at the time of the session of the commissioners hereinafter mentioned; that at the session of the commissioners in Vermont, the defendants and their co-administrator from New York were present, and that the plaintiff presented a claim for allowance, which was allowed at $500; and the testimony tended to show, that said allowance of $500, was on account of the money in question, delivered as aforesaid. The plaintiff, however, insisted that said allowance was not on account of said money.

It appeared, and was not disputed, that at first, the whole of the plaintiff's claim on account of money so paid on the foreclosure to Heartt, was allowed; but that the defendants, arriving from New York on the same day on which the allowance was made, the same was set aside by consent of parties, and the defendants admitted to contest the claim.

The plaintiff, for the purpose of showing that the defendants were directly liable to him for the money in question, and that the cause of action did accrue within six years, offered the following testimony and witnesses:

Mr. Allen, one of the commissioners, testified; that on the hearing before them, at Bridport, both of the defendants were present; that Hiram Buck, one of the defendants, flung out a paper, showing the receipt of $450 or $460, at different times, and stated that he had received the money, by the hands of his father, from the plaintiff, and was to put it into lumber and pay it over; that they forwarded the lumber, but that it was not received by Heartt in season for application upon the mortgage; that said Hiram also said, that he considered it a just debt, because his father had told him so, but he did not know where the money was to come from to pay.

It also appeared, that the estate of Samuel Buck was insolvent. That Helon Buck, the other defendant said, that he never received any of the money, but was satisfied it was all right, because his father told him so; that it was a just debt and he was willing to pay his half of it. That after the session of the commissioners

was over, both of the defendants said it was equitably settled; that Helon Buck said he would use his influence to have the money paid in at Hammond's; that he knew nothing about it, except what his father told him, and that Hiram Buck said that he did not know where the money was to come from.

William B. Benjamin testified, that after the session of the commissioners, he had a conversation with the defendant, Helon Buck, alone, in which Helon stated, that " we have effected a settlement with John," (meaning the plaintiff,) and gave the reasons why the money should be paid in at Hammond's, that Hiram hung off, but finally agreed to pay it; and that the debt was for money, they had of their father from Brainard to apply on the mortgage.

N. S. Bennett, the other commissioner, called by the defendants, testified that on the first day that the commissioners met, the plaintiff and both defendants were present, and that the plaintiff at that time presented no claim against the estate; that at the second session, the defendants not being present, the plaintiff presented a claim of over $2000, for having paid the amount of the decree, which claim was sworn to and allowed by the commissioners; that afterwards the defendants appeared, and at their request a rehearing was granted, at which, both plaintiff and the defendants were present; that both defendants said, there was nothing to pay debts with; that Helon said, he had heard his father say, that there was some $450, that should be paid to Brainard, and wanted they should pay it; that from what was said and claimed, the commissioners finally allowed $500; that Helon said, that from what his father said, he thought it right, and that it ought to be allowed, and that Hiram said he should not take an appeal from the allowance of the commissioners; that Hiram said all the while that there was nothing to pay with; and also said if he had had any money, he had already paid it over. The witness also testified that he did not see any such paper with minutes of money having been received, as stated by Allen.

The defendants, among other things, offered in evidence the release and settlement of accounts between them and Samuel Buck, their father, and the father-in-law of the plaintiff, dated June 5th, 1838, which on objection by the plaintiff, was excluded by the court, as immaterial.

Upon this evidence the defendants insisted that the testimony

showed no original, direct liability to the plaintiff for the money, and that therefore, this action could not be sustained; but if it tended to show such original liability, still the evidence was insufficient to take the case out of the statute of limitations, as to both, or either, of the defendants.

But the court held, that the evidence was proper to be submitted to the jury to show an original liability of the defendants to the plaintiff; and that as the proof of the original indebtedness consisted wholly of declarations made by the defendants, within six years before the suit was brought, said declarations, if the jury were satisfied that they proved such original indebtedness, were sufficient also to take the case out of the statute of limitations, and so charged the jury. The court also charged the jury, that if the credit, in regard to the money in question, was originally given by the plaintiff to Samuel Buck, and he delivered it to the defendants as his own, that the plaintiff was not entitled to recover; that if the money was originally received by the defendants, as the money of the plaintiff, through Samuel Buck, as his agent, the plaintiff was entitled to recover, even if they should find that the allowance by the commissioners was on account of said money.

The evidence tended to prove that the defendants entered into partnership in 1830 or 1831, and dissolved in 1842 or 1843. And the court charged the jury, that if they found that either of the defendants, in any conversations, (herein detailed,) which took place within six years previous to the commencement of this suit, made declarations, admitting the original indebtedness of both defendants, and that it was a just debt, and ought to be paid, it would be sufficient to take the case out of the statute of limitations, as to the other defendant.

The jury returned a verdict for the plaintiff.

Exceptions by defendants.

*J. A. Beckwith* and *J. Pierpoint* for defendants.

The statements of Samuel Buck before the master in chancery, were not addressed to the defendants, and did not call for a reply; therefore, the court ought not to have admitted them to charge these defendants. *Vail* v. *Strong,* 10 Vt. 463. *Gale* v. *Spooner,* 11 Vt. 155. *Mattocks* v. *Lyman,* 16 Vt. 113. *Hersey* v. *Barton,* 23 Vt. 687. And if this be the rule in ordinary cases, how much

stronger should it apply in a case like this, where the defendant had not only no discretion, but absolutely no right to reply. *Melen* v. *Andrews*, 22 E. C. L. 329, cited 2 Stark, 26.

The evidence detailed in the bill of exceptions, was not sufficient to remove the statute bar. 1. The acknowledgments proved, do not of themselves meet the requirements laid down in *Phelps* v. *Stewart*, 12 Vt. 264. 2. Whatever admissions were made by the defendants, were made in representative capacity, as administrators on Samuel Buck's estate, and ought not to be construed, so as to affect the defendants personally. 2 Stephens N. P. 1630. 2 Stark, Ev. 27.

Declarations, that a valid debt had once existed, made by the defendants within six years, are not sufficient to remove the bar; the acknowledgments must admit "the debt as still due, with an apparent willingness to remain liable for it," as in *Phelps* v. *Stewart*, 12 Vt. 264. *Cross* v. *Connor*, 14 Vt. 394.

Hence, the charge of the court, upon this point, does not accord with the settled law of the State.

The declarations of one defendant, are not available to remove the statute bar, as to the other; and the jury should have been so instructed. Comp. Stat. 380 §§ 27, 28.

*H. & O. Seymour, S. S. Phelps and E. J. Phelps* for plaintiff.

1. The evidence tended to show that the money in question, was furnished by the plaintiff to the defendants, to be used in the business of lumbering; and in the course of said business to be paid over upon a mortgage, which the plaintiff was then liable to discharge. And that the defendants did not so pay over the money. The court were right in ruling, that if these facts were proved the plaintiff was entitled to recover. The question to whom the credit was originally given, was fairly left to the jury.

2. The evidence was sufficient, if true, to take the case out of the statute of limitations.

When this cause of action accrued, the common law rule prevailed, by which the acknowledgment of one joint debtor, was available for this purpose, against all. The section of the statute which alters this rule, is limited in its application to causes of action, which should accrue after that act took effect. Comp. Stat. chap. 61 § 28. *Wheelock et al.* v. *Doolittle*, 18 Vt. 440. And as

the acknowledgments proved, contained on the part of both defendants, expressions of willingness to pay the debt, the court correctly held, that if sufficient to establish the original indebtedness, they were also sufficient to take the case out of the statute of limitations.

3. Mr. Seymour's evidence was properly received. The circumstances under which the statements of Samuel Buck, in presence of the defendant, were made, were, so far as appears, such as to call for denial if untrue. At all events, the exceptions do not show the contrary, and error will not be presumed.

It was, therefore a question for the jury how far the silence of defendant ought to be regarded as assent. *Vail* v. *Strong,* 10 Vt. 446.

The opinion of the court was delivered by

BENNETT, J. On the trial of this case in the County Court, several questions were raised, but we do not find it necessary to decide but a small portion of them.

The plaintiff, on the trial, claimed the right to give in evidence the statements or declarations of Samuel Buck. As these declarations are not *prima facie* admissible, it was incumbent upon the plaintiff to show enough to take them out of the ordinary rule, otherwise there would be error in admitting them. The case only shows that at a proceeding in chancery, to foreclose the mortgage of Heartt against Samuel Buck, one of the defendants was present before the master, as a witness, and that in his presence, Samuel Buck, a party to the proceeding, made certain statements, tending to show, that the money in question in this suit, came to the defendants' hands, and that the statements were not denied by the defendant, then present, but he remained silent. It does not appear that the statements were directed by Samuel Buck to the defendant, who was then present, as a witness, but the fair intendment from the case is, that what he said was in a judicial proceeding, and in relation to the matter then in controversy. The offer was, to prove that, at the hearing before the master, Samuel Buck, a party to the proceeding, made certain statements, &c.; and one of the specific objections was, that the statements were made in a judicial proceeding. We think it is quite clear, that enough was not shown, to make the declarations of Samuel Buck, evidence

against these defendants, even if both had been present, which perhaps upon common principles, might not be necessary.

The statements being in a judicial proceeding, and not directed to the defendant, who was then present, could not call for a denial, and indeed it would have been quite irregular for him, who stood as a stranger to those proceedings, to have interfered and denied any statements which may have been made to the *Master*, by either party. Certainly, no inference should be made against him for not doing it. See *Melen* v. *Andrews* 22 E. C. L. 329. In this State, the cases have gone great length, in excluding the declarations of a third person, unless made under such circumstances as to call for a reply. There was, we think, error, as the case is made up, in submitting to the jury the declarations of Samuel Buck, as a part of the evidence.

The court charged the jury, "that if the evidence was sufficient to satisfy them, that there was an *original indebtedness* on the part of the defendants, it would also be sufficient to take the case out of the statute of limitations." We think it must at once be conceded, that this is an unsound proposition. The defendants might in the most explicit terms have admitted the debt, as once existing against them personally, and at the same time declared they would never pay it, for the very reason that the statute had run upon it. It is quite possible that there is some omission in the case; and if we could see from the bill of exceptions, that the defendants were not on the whole, prejudiced in their rights by this portion of the charge, we should not grant a new trial. Though the evidence of the original indebtedness consisted of declarations made within six years before the action was brought; and though the jury have found an original liability against the defendants, yet it is a *non sequitur*, that the statute bar has been thereby removed, or that the evidence was sufficient for that purpose.

To remove the statute bar, there must not only be an acknowledgment of a subsisting debt; but it must, under our decisions, not be accompanied with an unwillingness *to pay it*. If so, there can be no *implied promise* to pay it, which at least, is now held necessary. The great question on the trial, seemed to be, whether Samuel Buck was the original debtor, or these defendants; and certainly, the declarations of the defendants, which were resorted to by the plaintiff, as a medium of proof, might have had some tendency to

prove that the estate of Samuel Buck was the debtor. The dec-- larations may be more or less *equivocal*; and though the jury may have found that the defendants were the original debtors, yet they might upon a correct charge have negated any intention, on the part of the defendants, to have remained liable for the debt. The testimony, at least, must be considered *equivocal* on this point; and we cannot, as matter of law, say that what is sufficient to prove one, will prove the other.

Without considering any other point in the case, the judgment of the County Court is reversed, and the cause remanded for a new trial.