# PIERCE'S ADMINISTRATOR

v.

# SUSAN A. PIERCE ET AL.

JANUARY TERM, 1894.

*Declarations of husband not evidence against wife.    When the fact of keeping silence is admissible.*

1.  The claim being that the husband of the defendant had used certain money belonging to the orator's intestate to pay a debt of the husband which was secured by mortgage on the real estate of the wife, declarations of the husband to that effect are inadmissible.

2.  The fact that a party keeps silence can only be given in evidence against him when, under the circumstances, he was called upon to speak. So where a husband said in the presence of his wife that he had used certain money to apply on a certain indebtedness, that the wife made no response is not evidence of the fact stated as against her; nor where, just before the death of her husband, when he could scarcely hear or speak, she, as the medium of communication between him and another person, repeated similar expressions without contradiction, is that fact evidence against her.

Bill in chancery to assert a lien against certain real estate. Heard upon bill, answer and master's report at the September term, 1893, Rutland county. TYLER, chancellor, dismissed the bill *pro forma*. The orator appeals.

The orator was the administrator of Marcellus A. Pierce. The defendants were Susan A. Pierce, the Rutland Savings Bank, and Henry O. Edson. Nathan Pierce was, in his

24

life time, the husband of Susan A. Pierce. He was indebted to the National Bank of Poultney in the sum of ten thousand dollars, which was secured by a mortgage upon the property of the defendant, Susan A. Pierce. This debt was paid and the mortgage to the National Bank of Poultney discharged. The claim of the orator was that certain funds belonging to his intestate had been used in part payment of this mortgage, and the purpose of the bill to enforce a lien against the mortgaged premises to the amount of the funds so used.

The master found that Nathan Pierce was, in 1863, a prosperous merchant in Rutland, owning a residence property there, being the property in question, which he occupied as a homestead, and he was at that time free from debt. In December of that year he conveyed this property to his wife, through a trustee, in the usual form, such conveyance being without consideration, and made for the purpose of transferring the title to her.

In 1872 he became involved, and in July of that year he and his wife, the defendant, joined in a mortgage of this property to the National Bank of Poultney to secure his note for ten thousand dollars. In 1880 the National Bank of Poultney went into liquidation and the receiver demanded payment of this note.

Marcellus A. Pierce was the owner of certain real estate, which Nathan Pierce sold for him in the spring of 1880, remitting a portion of the purchase price, and retaining one thousand nine hundred dollars in his hands. For the purpose of paying off the Poultney Bank Nathan Pierce obtained two thousand dollars from the Rutland Savings Bank and eight hundred dollars from Henry O. Edson, a brother of the defendant, and executed mortgages upon the property in question to secure the payment of these sums respectively.

The orator claimed that he also used the one thousand nine hundred dollars belonging to his brother for the same

purpose, but the master reported that he was "unable to find that any more than one thousand two hundred dollars out of said one thousand nine hundred dollars was applied by Nathan to that debt."

Marcellus A. Pierce died in Georgia, in June, 1881, leaving two children, who resided in Rutland with the orator subsequently to that time. Nathan Pierce died in Rutland, in May, 1883, leaving no estate.

The master reported that the defendant, Susan A. Pierce, was not familiar with business transactions; that she left the management of the property in question entirely to her husband during his life time, and signed the various conveyances because she was requested to do so, although at the time she knew what they were for.

The master received the following evidence, against the objection and exception of the defendant:

1.   Certain letters from Nathan Pierce to Marcellus Pierce in which the former acknowledged that he had used the funds in his hands belonging to the latter in the payment of the Poultney bank mortgage.

2.   Evidence of the fact that about six months before his death Nathan Pierce, in conversation with one of the intestate's children, stated that he had used the money belonging to them in order to save the homestead, being the property in question, and that this statement was made in the presence of the defendant, who made no response.

3.   Evidence of the fact that a day or two before the death of Nathan, when he was so low that he could talk but very little, and could be heard with difficulty, the orator had an interview with him about his business affairs, the defendant repeating for the most part to the orator what she apparently received from Nathan; that in the course of this conversation Nathan referred to the funds which he had received and used, as above stated, saying that he had put such funds into the house and that a memorandum of all

would be found upon his books; that the defendant knew all about it and would see that it was paid; that he took the funds to redeem the Poultney bank mortgage, and that the money belonged to the children of his brother, Marcellus. The master found "that the defendant acquiesced in all that her husband said, and said that it should be paid."

*J. C. Baker* for the orator.

If the money of the intestate was used to pay off the Poultney bank mortgage, the discharge of the mortgage should be stricken off and the orator should be subrogated to the rights of the Poultney bank.   2 Beach Modern Eq., ss. 797, 800; *Pease* v. *Eagan*, 131 N. Y. 262; *Spaulding* v. *Harvey*, 129 Ind. 106; *Stevens* v. *Goodenough*, 26 Vt. 676; *Smith* v. *Foran*, 43 Conn. 244; *Emmert* v. *Thompson*, 49 Minn. 386.

A lien of that sort will not be regarded as extinguished when equity requires it to be treated as alive.   3 Pom. Eq. Juris., s. 1212; *Building Assn.* v. *Thompson*, 32 N. J. Eq., 133; *Gans* v. *Thieme*, 93 N. Y. 225; *McKensie* v. *McKensie*, 52 Vt. 271; *Cobb* v. *Dyer*, 69 Me. 494; *Johnson* v. *Barrett*, 117 Ind. 551; *Everson* v. *McMullin*, 113 N. Y. 293.

The husband was the agent of his wife, the defendant, and his declarations in the course of the transaction are admissible.   2 Rice Ev., 990; Abbott's Trial Ev., 174; *Houston* v. *Clark*, 50 N. H. 482; *Nelson* v. *Cowing*, 6 Hill. 336; Cliquot's Champagne, 3 Wall. 114.

They were also a part of the *res gestæ.*   1 Greenl. Ev., s. 113; *Ward* v. *White*, 86 Va. 212; *Lewis* v. *State*, 29 Tex. Ap. 201; *Marsh* v. *Davis*, 24 Vt. 263; *Barber* v. *Bennett*, 62 Vt. 50; *Rudd* v. *Rounds*, 64 Vt. 432.

*C. H. Joyce* for the defendant.

A voluntary payment does not entitle the party making it to subrogation. *Bullard* v. *Beach*, 27 Vt. 491; *Wheeler* v. *Willard*, 44 Vt. 640; *Downer* v. *Wilson*, 33 Vt. 1; *Miller* v. *Rut. & Wash. Rd.*, 40 Vt. 408; 6 Laws, Rights, Rem. and Pr., ss. 3048, 3051; *Hubbard* v. *Ascutney Mill Dam Co.*, 20 Vt. 402; *Downer* v. *Fox et al.*, 20 Vt. 388; *Walker* v. *King et al.*, 45 Vt. 525; *National Bank* v. *Cushing*, 53 Vt. 321.

TAFT, J. The important question in this case is whether any of the money of the orator's intestate was used in paying the Poultney Bank mortgage. The master reports that he is "unable to find that any more than one thousand two hundred dollars out of said one thousand nine hundred dollars was applied by Nathan to that debt." Treating this argumentative statement as an affirmative finding that one thousand two hundred dollars was so applied, the questions of evidence raised by the exceptions to the report become material. There are three exceptions in respect to the evidence.

I. Nathan Pierce wrote a letter to his brother Marcellus stating that he, Nathan, had used some of his (the brother's) money in paying the bank mortgage. The master admitted this letter, with others of like import, as tending to show the truth of the statements contained therein. The orator contends they were admissible upon the ground that Nathan was agent of the defendant; that fact, however, does not appear, but the contrary is apparent from the report. Although the defendant suffered Nathan to manage the property as his necessities required and joined with him in the mortgage, the debt secured thereby was the debt of Nathan and in paying it he was acting for himself, not for her. It is true she was interested in having the debt paid, but she was not paying it, her husband was doing that, and his declarations and admissions in so doing were not binding

.upon her.    The letters were not admissible upon the ground that the statements contained in them were admissions made by her agent, for Nathan was not acting for her in the transactions to which the letters related.    For the same reason, if the letters were a part of the *res gestae*, which we do not decide, they could not be admitted to affect the rights of the defendant, in any respect, for they were no part of any transaction to which she was a party.    Neither were they admissible as the act of a co-conspirator, for it is not shown by legitimate evidence, if at all, that the defendant knew of the use of the money as alleged, until long after its payment.

II.    Six months before Nathan's death he stated to one of the children of Marcellus, in the presence of the defendant, that he had used the money belonging to the children of Marcellus in paying the bank mortgage.    The defendant made no response.    This declaration the master received in evidence to establish the fact stated.    We think it was not legitimate testimony.    It was a mere declaration of Nathan, not made in response to any inquiry, certainly not in response to any inquiry made of the defendant.    Under such circumstances she was under no obligation to reply to the declarations of her husband.    She was not called upon to speak and her silence could not be shown in evidence against her.    *Hackett* v. *Callender*, 32 Vt. 97 ; *Durant* v. *Pratt*, 55 Vt. 270, and cases hereinafter cited.

III.    A day or two before Nathan's death, when he was so low that he could talk but very little and could be heard with difficulty, the orator had an interview with him.    The defendant repeated to the orator, for the most part, what she understood Nathan to say.    Nathan made the same statements as those contained in the letters and that made six months before his death, as above stated, and said that the defendant knew all about it, and would see that the amount, so taken by him to pay on the bank mortgage, was paid.

The master finds that at this interview, the defendant " acquiesced in all that her husband said," and said the amount should be paid.   The word acquiesced used in this connection is quite equivocal.   Does it mean that she made any response, or acquiesced by her silence?   Webster gives the principal definition of " to acquiesce " as " to accept or consent by silence or by omitting to object."   If the master means that she acquiesced by remaining silent, then to give her acquiescence any force as evidence against her, it should have appeared that she was in a situation in which it was her duty to speak.   The interview was with her husband, not with her; it does not appear that she was inquired of in the matter.   If she was not called upon to speak, was not inquired of, and made no response, then there was no such acquiescence as would bind her, nor justify the master in finding from her silence any admission of the truth of Nathan's statements.   Whether a person is bound to speak when statements and declarations adverse to his interests are made, is often a perplexing question, and it is difficult to state a rule applicable to all cases, as the question so often depends upon the circumstances attending each case.   It has often been before our courts and the rule deducible from the cases seems to be this, evidence that a party remained silent when declarations adverse to his interests are made in his hearing and presence, may be heard by the trier when the occasion upon which the declaration is made calls for admission or denial on his part.   In other words, whenever he is called upon to speak; whenever the circumstances demand a reply.   *Vail* v. *Strong,* 10 Vt. 457 : *Gale* v. *Lincoln,* 11 Vt. 152 ; *Mattocks* v. *Lyman,* 16 Vt. 113 ; *Vilas* v. *Downer,* 21 Vt. 419 ; *Hersey* v. *Barton,* 23 Vt. 685 ; *Brainard* v. *Buck,* 25 Vt. 573 ; *McCann* v. *Hallock,* 30 Vt. 235 ; *Brown* v. *Mudgett,* 40 Vt. 68 ; *Perry* v. *Dow,* 59 Vt. 61 ; *Frary* v. *Gusha,* Ib. 257.

In 30 Vt. 235, it is said if the inquiries are made for the

purpose of obtaining evidence, that the party has a right to remain silent without being prejudiced thereby.

In 16 Vt. 113, it is stated that unless a claim is asserted and distinctly made to the party, and calling naturally for a reply, mere silence is no ground for inference against him, and we think even in such a case that mere silence ought not to conclude a party unless he thereby induces one to act upon his silence, in a manner different from what he otherwise would have acted; unless the party asserting the claim does it with a view to ascertain the claim of the other in order to know how to regulate his own conduct in the matter, and this is known to the other party, who remains silent, and thereby leads the other party astray, mere silence is no ground of inference against such other party.

In 23 Vt. 685, it is announced that if the inquiries are made under such circumstances as demand a reply, that silence is a species of evidence of doubtful character, and in 10 Vt. 457, that the strength of the evidence depends altogether upon the force of the circumstances and the motives which impel a denial, if the statements are untrue. When inquiries are made of one under circumstances that call for a reply, they must be made at a time, and under circumstances, when inquiries are proper. Steph. Dig. of Ev. 51, note. It was held that one may remain silent when engaged in a trial in *Broyles* v. *State*, 47 Ind. 251.

A person is always at liberty to show (40 Vt. 68) under what circumstances he used the expressions relied upon to charge him. What a man says under the surprise of a sudden and unexpected demand for money ought to be construed with a good deal of strictness. *May* v. *Coffin*, 4 Mass. 347. As qualifying declarations, it may be shown that a person is in poor health, hypochondriacal, and in depressed spirits. *Brackett* v. *Wait*, 6 Vt. 411.

If a person make any statements upon the subject inquired of, he then makes all that is said to him on the occasion and

his silence as well as his answers, evidence to go to the jury, and they are to determine its weight.    30 Vt. 235.

Any response that the defendant made to the statements of her husband, whether she was called upon to speak or not, if she did speak, was admissible against her and legitimate evidence upon the question of whether she admitted that the one thousand two hundred dollars was used in paying the bank mortgage.    Her promise that it should be paid, if she made such a promise, was evidence for the same purpose. It will be noted that the master does not find that the defendant promised that she would pay the money, but " said that it should be paid," whether by her, or by her husband, for whom she was then speaking, is not clearly apparent.    In this case the great difficulty lies in determining whether the defendant was bound to make any reply to the statements of her husband.    Under the circumstances we do not think she was.    She was at the bedside of her dying husband.    He was in the throes of death and the wife was under no duty to respond to any statements made by him, and ought not to have been compelled to answer nor deny his statements, if false.    The construction we give the report is that she acquiesced, in what her husband said, by silence; and as we think she had a right to remain silent, was not called upon to speak, from her silence alone no adverse inferences can be drawn against her.    The master reports that she said the debt should be paid.    This is evidence tending to show that she admitted the existence of the debt.    All the circumstances, however, attending the statement should be considered.    If she said it merely to please her dying companion, without knowing its truth, its force might vary greatly from an admission made under different circumstances and with full knowledge of the facts.    The cause must be remanded that it may be heard upon legitimate evidence.    The letters were not admissible.    The testimony as to Nathan's statement six months before his death was not

admissible.  She was not called upon to speak at the interview between the orator and her husband, and if she said nothing her silence should not be construed against her, nor inference drawn from it.  If she did speak, what she did say, or omitted to say in connection with what she said, may properly be considered.

*Decree reversed and cause remanded for further proceedings.*